# Exhibit D

*Interrog. of Daniel Sullivan*

recall who the visitor was nor when the incident occurred. I do not recall ever authorizing any "search" of a female visitor beyond a normal "pat-down" search during my time at SCCF.

7. Identify and describe each communication or correspondence, including the approximate date, medium of communication/correspondence, and the contents of each communication/correspondence, you have had from February 1, 2014, to the present, referencing visitors who were menstruating, suspected of menstruating, or in possession of feminine hygiene products, such as sanitary napkins, maxi pads, tampons, and menstrual cups. In your answer, identify any documents or other records exchanged during, in preparation of, or in response to any such communication/correspondence.

**RESPONSE: Defendant objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, said interrogatory requests information protected by the work product doctrine and the attorney/client privilege.**

8. Identify each time you were made aware of a Search (defined above) during your career at SCCF. In your answer, please state how you were made aware of each Search, who informed you of each Search, when you were informed of each Search, the facts supporting each Search, what forms you completed as a result of the information, what actions you took in result of being informed of each Search, and any correspondence, record, memorialization, log entry, email. ESI. or any other document you read, drafted, signed, generated, or promulgated as a result of being informed of each Search.

**RESPONSE: I am and was aware of the policy allowing correctional officers to require female visitors to change their feminine hygiene products if there is reasonable suspicion to believe the visitor is attempting to bring contraband into the facility. I knew of no specific incidents when this occurred until I received the Complaint in this lawsuit.**

9. Describe your employment history from January 1, 2009, to the present. In your response, please state for each position held: (1) each employer; (2) your job title(s) at each employer; (3) the date you were hired by each employer; (4) the date you began working for each employer; (5) your salary or rate of pay for each employer (specifying any increase or decrease in your salary or rate of pay); (6) a brief description of your job duties at each employer; (7) the date you left your employer's employ; and (8) the dates you were present on your employer's premise(s) after you left your employer's employ_ Please provide your answer in chronological order, that is, showing each period of employment beginning on January 1, 2009, to the present. If you took a leave of absence or resigned/were terminated from a position and thereafter returned to your employer's employ, please state in your response the above requested information for *each* period or stint of employment. If you ever transferred while working for the same employer, please list

those periods of employment as if they were separate employers and note the location of each period of employment.

**RESPONSE: Defendant objects to this interrogatory as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and as seeking information that is entirely irrelevant and unrelated to the claims in this lawsuit. From 2007-2013, I coached high School basketball in Elmira, New York at Notre Dame High School. From January 2011-July 2012, I performed environmental inspections for Crescent Services in Sayre, Pennsylvania. In March 2013, I started working at SCCF as Chief of Security. In November 2014, I transferred to the Crowley County Correctional Center in Crowley County, Colorado where I work as an assistant warden.**

10. Identify and describe each time you consulted or communicated or attempted to consult or communicate with any CCA employee (including any FSC/Facility Support Center employee) concerning TDOC Policy #506.06, revised in February 2014, regardless of whether such consultation or communication was reduced to writing, occurred through electronic means, or occurred in-person, telephonically, or otherwise, and regardless of whether the persons with whom you consulted or communicated ever responded to your attempt at consultation or communication. your answer, please describe the nature and substance of each consultation or communication, the medium of each communication, the person(s) with whom you communicated, the reason(s) for such consultation or communication, what actions (if any) you took as a result of each consultation or communication, and the time, date, and location of each consultation or communication.

**RESPONSE: Defendant objects to this interrogatory as overly broad, unduly burdensome, vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. TDOC policy 506.06 covers searches of all individuals including inmates and employees and is implemented on a daily basis. It would be impossible for me to recollect each time I have communicated with another CCA employee concerning said policy.**

11. Describe the nature of your duties as Chief of Security at SCCF.

**RESPONSE: As Chief of Security, I was responsible for the overall security plan and the security operations of the facility, including staffing and post assignments.**

12. Please state the internet addresses (Uniform Resource Identifiers) of any social media (including, but not limited to, websites such as Facebook, Twitter, Instagram, Tinder, Kik, Bebo, Foursquare, LiveJournal, CaringBridge, last.fm, StumbleUpon, BlackPlanet, Google+,