IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE, et al., | ) |
| | ) |
| vs. | ) No.: 3:15-0068 |
| | ) |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA, et al., | ) |

___

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO UNSEAL (D.E. 119) AND REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' "MOTION TO ENFORCE THE PROTECTIVE ORDER" (D.E.114)**
___

Defendants, Corrections Corporation of America ["CCA"], Arvil Chapman, Daniel Sullivan, Kelly Garska, Mia Qualls, Gina Gonzales, Felicia Roach and Mercedes Jones, by and through counsel, respond in opposition to Plaintiff's motion to unseal Defendants' Motion for Summary Judgment and associated pleadings (D.E. 119) and Reply to Plaintiffs' Response in Opposition to Defendants' Motion to Enforce the Protective Order. (D.E. 114).

**I. Defendant Appropriately Filed Their Summary Judgment Filing Under Seal While Plaintiffs Violated this Court's Protective Order when they Filed their Summary Judgment Filings as Public Filings.**

Plaintiffs first argue that Defendants violated the local rules by not obtaining leave prior to filing their motion for summary judgment under seal. Such an accusation is simply incorrect. Pursuant to the Protective Order entered in this case, the Court had already allowed the parties to make filings under seal when it stated:

> No Confidential Information may be filed with the Court, whether the actual confidential document or information from a confidential document, unless counsel for the Party with an interest in protecting such Confidential Information agrees to the filing (with or without redaction of certain information), or, the filing is under

1

seal.

(D.E. 31 ¶ 7). Accordingly, this Court has ruled that no information deemed "confidential" or "information from a confidential document" shall be filed with the Court unless opposing Counsel agrees. Otherwise, the filing must be made under seal. In Defendants' motion and supporting documentation, Plaintiffs' individual names were identified, confidential documents were attached as exhibits and there were numerous references and discussions relating to the confidential documents in the motion, memorandum and statement of undisputed facts that would violate the order and the spirit of the order. Accordingly, Defendants were *required* by the Protective Order to file their documents under seal and therefore, did so.

On the other hand, Plaintiffs filed their motion for summary judgment and supporting documentation for public view in spite of the clear language of the Protective Order.[1] Before getting into the reasons why such documents were deemed confidential by Defendants, Defendants would point out that Plaintiffs have admitted that Defendants designated many of the documents produced during discovery as "confidential" pursuant to the protective order. (See. D.E. 119 PageID 2001-2002). These documents included policies, local policies, logs, contact notes, photographs of the facility, visitation histories, and disciplinary histories, among numerous other documents produced by Defendants. Importantly, Plaintiffs <u>never</u> once challenged Defendants' designations, yet went forward with filing their summary judgment filings for public view. Confusingly, Plaintiffs filed their exhibits under seal (which included numerous documents Defendants' deemed confidential) but nothing else. They did so even though their public filings clearly discussed information obtained from the documents Defendants deemed confidential. Such an action absolutely and unequivocally violated the protective order entered in this case which

---

[1] The Court has since ordered said filing be placed under seal until it rules upon the relevant pending motions. (D.E. 117).

2

states in part:

> ….If a Party disagrees with another Party's designation of any document as "CONFIDENTIAL," the disagreeing Party shall request in writing that the producing party redesignate such document, such request setting forth the specific documents at issue and the reasons the receiving party believes such document should be redesignated. If the producing party does not redesignate the document within five (5) business days after receipt of the request to redesignate, the receiving party may then make a motion with the Court seeking the redesignation of such documents…

(D.E. 31 ¶ 9). Here, Plaintiffs may disagree with Defendants' designation of many of the documents produced as confidential, but they <u>never</u> informed Defendants of their disagreement, <u>never</u> filed a motion with the court, and instead arbitrarily decided to file their motion for summary judgment and supporting documentation for public view. Such an action was clearly in violation of the Protective Order, which forced Defendants to file an expedited motion to have Plaintiffs' documents placed under seal. (D.E. 115).

**II. This Court Should Deny Plaintiff's Motion to Unseal the Summary Judgment Filings and Order that All Summary Judgment Filings Remain Under Seal.**

Contrary to Plaintiffs repeated assertions, the information that has been discussed and divulged in this case speaks directly to SCCF's safety and security, which is what the Protective Order was in part designed to protect. (D.E. 31). Further, Plaintiffs incorrectly state in their motion that "Plaintiffs do not quote any materials marked 'confidential' in their statement of facts or memorandum of support of their motion." (See D.E. 119 PageID 2001). Contrary to such an

assertion[2], Plaintiffs cite and discuss TDOC policies that Defendants deemed confidential[3], they discuss logbook entries that Defendants deemed confidential[4], they discuss SCCF local policies that Defendants deemed confidential[5], they discuss visitation records which Defendants deemed confidential[6], they discuss the nature and procedures of searches[7], they discuss the actions staff take in observing visitors during visitation[8], they discuss certain behaviors of visitors that visitation staff watches out for when conducting visitation[9], and they discuss the visitation process as a whole[10]. Plaintiffs contend in spite of Defendants designations that such information is confidential and that all of this information can be obtained "through a public records request." That is simply not the case. While certain policies could possibly be obtained through such a request, the implementation of those policies, the ways searches are conducted, the actions visitation staff take to monitor visitors in an effort to prevent contraband and information related to specific behavior that staff look for in visitors simply could not be obtained by a public record request.

Clearly, Plaintiffs, as they have throughout the case, simply fail to understand the seriousness of safety and security concerns prison facilities have when considering the introduction

---

[2] Defendants will cite below to examples in Plaintiffs' Statement of Undisputed Facts where they discuss information that should remain confidential pursuant to the safety and security needs of SCCF. This is by no means an exhaustive list considering Plaintiffs discussions into the visitation process and actions taken by officers in their motion for summary judgment, supporting memorandum and other facts in their statement of undisputed facts. Defendants are in no way agreeing to the facts as stated by Plaintiffs but simply show that the Plaintiffs are discussing information that relates directly to specific actions that SCCF takes to prevent the introduction of contraband into the facility. Further, to the extent Plaintiffs argue that portions of the depositions were not deemed "confidential", Defendants deemed the documents that Plaintiffs utilized when deposing Defendants as confidential and therefore any information obtained by Defendants as a result of those discussions during the depositions are likewise confidential pursuant to the protective order.
[3] For example, see D.E. 110 ¶ 84, 85, 86, 87, 95, 103.
[4] For example, see D.E. 110 ¶ 28, 31, 33, 81
[5] For example, see D.E. 110 ¶ 86, 92, 93, 94, 97, 136, 137, 138.
[6] For example, see D.E. 110 ¶ 21, 32, 56.
[7] For example, see D.E. 110 ¶ 36, 61, 91.
[8] For example, see D.E. 110 ¶ 26, 71, 73, 74, 134, 135.
[9] For example, see D.E. 110 ¶ 30, 34, 82.
[10] For example, see D.E. 110 ¶ 8, 9, 58, 59.

4

of contraband through visitation. They believe the procedures and practices of visitation staff of a prison should be open for the world to see, but fail to realize that such information can have devastating effects to a prison's ability to keep its inmates, staff and visitors safe. As discussed throughout Defendants' motion for summary judgment, the Supreme Court has stressed, "*Prisons are necessarily dangerous places*; they house society's most antisocial and violent people in close proximity with one another." *Farmer v. Brennan*, 511 U.S. 825, 858-59 (1994). The unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country, *Block v. Rutherford*, 468 U.S. 576, 588-89 (1984). "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The Sixth Circuit has further stated, "Prisons are dangerous and filled with law-breaking because that is where the criminals are. Even the most secure prisons are dangerous places for inmates, employees, and visitors." *Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) (citing *United States v. Fountain*, 768 F.2d 790 (7th Cir. 1975)). Therefore, the Court has "consistently accorded great weight to the professional expertise of corrections officials," and have held that Courts should be hesitant to become involved in the prison administration business. *See Spear*, 71 F.3d at 630; *Rhinehart v. Scutt*, 509 Fed. App'x 510, 516 (6th Cir. 2013); *see also Hill v. McKee*, 2010 U.S. Dist. LEXIS 139269, *1-4 (W.D. Mich. Aug. 27, 2010) ("The public interest would not be served by unnecessary and unwarranted judicial interference in the day-to-day operations of the Michigan Department of Corrections.")

In light of these considerations and these maxims of law, Courts have given great deference to a prison's wishes to keep its safety and security methods confidential and have held that information related to a prison's safety and security, security methods, as well as the prison staff's

ability to maintain prison order are "compelling reasons" to seal documents filed with the Court or allow only *in camera* review. *See Ponte v. Real*, 471 U.S. 491, 499 (U.S. 1985); *Riker v. Fed. Bureau of Prisons*, 315 Fed. Appx. 752, 755 (10th Cir. 2009); *Lawrence v. Thompson*, 2016 U.S. Dist. LEXIS 9897, *6 (W.D. Ky. Jan. 27, 2016); *Gomez v. McDonald*, 2015 U.S. Dist. LEXIS 123088, *118 (E.D. Cal. Sept. 14, 2015); *Doutre v. Aranas*, 2013 U.S. Dist. LEXIS 79633, *5-6 (D. Nev. June 5, 2013); *Martinez v. Cathey*, 2006 U.S. Dist. LEXIS 6019, *6 (E.D. Cal. Jan. 27, 2006). Here, SCCF has a compelling interest to keep drugs, weapons, and other contraband from entering the facility. During visitation there are specific actions and methods that SCCF takes to prevent the introduction of contraband. There are specific behaviors from visitors that SCCF staff are trained to observe in their effort to prevent contraband. There are specific records that SCCF keep during visitation whereby they keep track of visitors' actions. There are specific procedures followed when conducting a search. There are specific procedures that SCCF follows when visitors first come into the facility. All of these issues relate to the methods utilized by SCCF to prevent contraband from entering the facility and all of these issues are discussed throughout Plaintiffs' summary judgment filings. The dissemination of this information makes the public aware of SCCF's methods, which makes potential visitors more capable of developing schemes to introduce contraband into SCCF. In other words, such information could place the safety and security of SCCF at risk and pose the problem of more contraband being introduced. This is why from the beginning of the case, Defendants diligently identified documents produced during discovery as confidential and sought to keep from the public view certain methods that SCCF utilizes to prevent the introduction of contraband.

Plaintiffs in dramatic detail claim that Defendants' desire that the summary judgment filings remain under seal is an "extraordinary affront" to the First Amendment rights of the public.

6

They argue, in essence, that the public "has a right to know" the facts of the case so they can appropriately "scrutinize" the actions of a privately run prison. Contrary to their assertions, the Supreme Court has never ruled that there is a constitutional right to access court documents. *See United States v. Gonzales,* 150 F.3d 1246, 1256 (10th Cir. 1998). Further, Defendants in no way want to harm the public. To the contrary, Defendants' desire is to protect not just inmates and staff, but members of the public who wish to visit inmates incarcerated in SCCF. Contraband entering the facility threatens the safety and security of inmates, staff and visitors from the public alike. Of course, the hypocrisy of Plaintiffs' assertions is that Plaintiffs refuse to identify to the public who they are themselves and have proceeded under the guise of complete anonymity throughout this case. Thus, Plaintiffs, who have made wild allegations that Defendants have repeatedly denied, argue that they should be allowed to make such assertions for the public to know under complete unchecked anonymity while Defendants must be required to divulge to the public not only their identities, but also their policies, procedures, practices, and methods of preventing contraband from entering SCCF in spite of any potential security and safety risks which could result. Contrary to the Plaintiffs' wishes, the Court should protect not only the privacy interests of the Plaintiffs, but also the safety interests of SCCF.

Lastly, as pointed out by Plaintiffs, this case received much media coverage at the beginning of the case and many of the TDOC policies at issue can be obtained by the public through an online search or public records request. It is, therefore, unclear why the unsealing of the summary judgment filings could provide the public with more information needed to "scrutinize" CCA. The public already has access to Plaintiffs' allegations found in the Complaint and Defendants' responses to their allegations in the Answer to the Complaint. The media has already informed the public of the Plaintiffs allegations in detail. Thus, what more benefit could

7

the public receive by unsealing the summary judgment motions, other than simply learning the practices and methods SCCF uses to prevent contraband from entering the facility? Such knowledge would not benefit anyone and would only hinder SCCF's ability to maintain safety and security. It is clear that the real reason Plaintiffs boldly disobeyed the protective order and have aggressively accused Defendants of "violating Court rules" is that they desire to create more media attention to the case to inflame the public against Defendants. Such media attention could only poison a potential jury and prevent a fair trial to be had.

Premises considered, this Court should deny Plaintiffs' Motion to Unseal Defendants' summary judgment filings, should deny Plaintiffs' request to file their exhibits with "appropriate redactions" and should order that all summary judgment filings in this case remain under seal.

Respectfully submitted,

PENTECOST, GLENN, MAULDIN & YORK PLLC

By: s/James I. Pentecost
James I. Pentecost (#11640)
Jon A. York (#23106)
Nathan D. Tilly (#31318)
Attorneys for Defendants
106 Stonebridge Blvd
Jackson, TN 38305
(731) 668-5995 – Telephone
(731) 68-7163 – Facsimile
jpentecost@pgandr.com

## CERTIFICATE OF SERVICE

   This is to certify that this Response has been served electronically via the Court's ECF system or via U.S. Mail on the following:

Tricia Herzfeld
Harry Elliott Ozment
William Patrick York, II
Law Offices of Elliott Ozment
1214 Murfreesboro Pike
Nashville, TN  37217

and

Jane Doe #3
and Minor Doe's 1-3
via the address provided to the Court by Jane Doe #3

  DATE: This the 8th day of August, 2016.

         PENTECOST, GLENN, MAULDIN & YORK, PLLC

         s/James I Pentecost