IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JANE DOE # 1, et al.          )
                              )
v.                            ) NO. 3-15-0068
                              ) JUDGE CAMPBELL
CORRECTIONS CORPORATION       )
OF AMERICA, et al.            )

MEMORANDUM

Pending before the Court are Defendants' Motion for Summary Judgment (Docket No. 105), Plaintiffs'[1] Motion for Partial Summary Judgment (Docket No. 109), and Plaintiffs' Motion to Strike (Docket No. 133). For the reasons stated herein, Defendants' Motion for Summary Judgment (Docket No. 105) is GRANTED in part and DENIED in part, Plaintiffs' Motion for Partial Summary Judgment (Docket No. 109) is DENIED, and Plaintiffs' Motion to Strike (Docket No. 133) is DENIED.

INTRODUCTION

Plaintiffs are female individuals who have visited and continue to visit inmates in the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. Plaintiffs claim that Defendants have required Plaintiffs to undergo humiliating and degrading searches when they have visited SCCF, by forcing Plaintiffs to change their feminine hygiene products in the presence of SCCF staff in small prison bathrooms. Plaintiffs contend that Defendants subjected them to these invasive searches without reasonable suspicion, in violation of Plaintiffs' constitutional rights and resulting in various

---

[1] The Plaintiffs who have moved for partial summary judgment are Jane Doe # 1 and Jane Doe # 2 only. Jane Doe # 3 is proceeding *pro se*. Docket No. 93. Because the minor Plaintiffs cannot represent themselves, cannot be represented by Jane Doe # 3, and have not obtained counsel by the deadline set by the Court, the claims of Minor Plaintiffs #1- #3 are DISMISSED.

state law claims. Characterizing these searches as "strip searches," Plaintiffs allege that Defendants required Plaintiffs to expose their unclothed genitalia to correction officials to verify that Plaintiffs were menstruating.

Defendants are Corrections Corporation of America ("CCA"), an entity charged by the State of Tennessee with the authority to maintain SCCF, and individual officers of SCCF, sued in both their individual and their official capacities.

Defendants claim that SCCF does not conduct "strip searches." Defendants argue that in light of the prisons' serious concerns about the introduction of contraband to the facilities, SCCF allows inmate visitation privileges only within specified guidelines, including visitors not being allowed to bring in their own feminine hygiene products. Defendants contend that Tennessee Department of Correction ("TDOT") and SCCF policies allow correctional staff to require female visitors to replace their feminine hygiene products in the presence of institutional staff if there exists individualized reasonable suspicion to believe that contraband is being brought in.

The parties dispute whether Defendants had individualized reasonable suspicion to believe that Plaintiffs might be bringing in contraband. Defendants assert that they had reasonable suspicion, in light of the Plaintiffs' histories, prior behaviors, appearances, and tips given to the officers, to require Plaintiffs to replace their sanitary pads in the presence of two female officers. Plaintiffs insist that they were "strip-searched" without reasonable suspicion, without a single specific, objective fact tying them to any wrongdoing or suspicion.

The parties also dispute exactly what happened when Plaintiffs were required to take the challenged actions. Plaintiffs allege that they were required to expose their unclothed genitalia to corrections officers to "verify" that they were menstruating. Defendants maintain that Plaintiffs were

2

required to change their feminine products to be sure there was no contraband, not to verify that they were menstruating. Defendants also contend that Plaintiffs were accompanied by two correctional officers into a restroom, where they were asked to change their feminine products while the officers turned their backs so as not to observe the Plaintiffs. The parties dispute the behavior of both Plaintiffs and the correctional officers before and during this time in the restroom.

## MOTION TO STRIKE

Plaintiffs ask the Court to strike the Declaration of Charles Fisher, Defendants' expert witness in this case, for three reasons. First, Plaintiffs claim that the Declaration is an untimely-disclosed, new expert opinion. Defendants argue that the Declaration is simply a summary of Mr. Fisher's opinions previously produced to Plaintiffs, not a Rule 26 expert report or supplemental report. The Court has read Mr. Fisher's two reports and Declaration and agrees with Defendants. Any changing in the wording of Mr. Fisher's Declaration from the two reports is minimal and does not constitute "new" information. Moreover, any differences go to the weight to be given his testimony, not its admissibility.[2]

Secondly, Plaintiffs contend that Mr. Fisher's Declaration contradicts his previous deposition testimony. Again, any discrepancies in the Declaration and the deposition testimony are not sufficient to strike the Declaration and go to the weight to be given his testimony, not its admissibility. In addition, some of the examples Plaintiffs give are not necessarily contradictions.

Finally, Plaintiffs argue that Mr. Fisher's Declaration attempts to create a "sham" issue of fact. For the same reasons as indicated above, the Court can read Mr. Fisher's Declaration in light

---

[2] In a footnote, Plaintiffs allege that Mr. Fisher is not qualified as an expert under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Plaintiffs' Motion to Strike is *not* a *Daubert* motion, and the Court will not address this argument.

3

of any alleged discrepancies, conclusory statements or legal conclusions and determine the weight it deserves.

For these reasons, Plaintiffs' Motion to Strike (Docket No. 133) is DENIED.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

4

Plaintiffs make much of the argument that Defendants have failed to construe the facts in the light most favorable to the Plaintiffs. With cross-motions for summary judgment, however, the *Court* must consider the Defendants' Motion in the light of the facts most favorable to the Plaintiffs and the Plaintiffs' Motion in the light of the facts most favorable to the Defendants.

JANE DOE #3

Plaintiff Jane Doe # 3 has failed to respond to Defendants' Motion for Summary Judgment or Defendants' Statement of Undisputed Facts. Failure to file a timely response to a motion indicates there is no opposition to the motion. Local Rule 7.01(b). Failure to respond to a moving party's statement of material facts within the time periods provided indicates that the asserted facts are not disputed for purposes of summary judgment. Local Rule 56.01(g).

The Court has reviewed the Defendants' Motion for Summary Judgment and supporting documents as to Plaintiff Jane Doe #3, pursuant to Stough v. Mayville Community Schools, 138 F.3d 612, 614 (6th Cir. 1998), and finds that Defendants have carried their burden to show that there are no disputed issues of fact as to Jane Doe #3 and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff Jane Doe #3 is GRANTED, and Plaintiff Jane Doe #3's claims against Defendants are DISMISSED. Accordingly, Defendants Roach and Jones, who are sued only with regard to Plaintiff Jane Doe # 3, are DISMISSED from this action.

CONSTITUTIONAL CLAIMS

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, which provides a private right of action against anyone acting under color of state law who subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of rights or privileges secured by

5

the Constitution and laws of the United States. *Rehbueg v. Paulk*, 132 S.Ct. 1497, 1501 (2012). The person suing under this statute must demonstrate the denial of a constitutional right caused by a defendant acting under color of state law.[3] *Epperson v. City of Humboldt*, __ F.Supp.2d __, 2016 WL 1736287 at * 3 (W.D. Tenn. April 29, 2016); *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014).

Thus, to establish the liability of the individual officers in their individual capacities under Section 1983, Plaintiffs must show the denial of a constitutional right caused by those officers acting under color of state law. To establish the liability of Defendant CCA and the individual officers in their official capacities under Section 1983, Plaintiffs must establish that their harm was caused by a constitutional violation and that a policy or custom of Defendants was the "moving force" behind the deprivation of the Plaintiffs' rights. *Miller v. Sanilac County,* 606 F.3d 240, 255 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Defendant CCA is liable for harms resulting from a constitutional violation only when the injury resulted from an implementation of Defendant CCA's official policies or established customs. *Id.*[4] Plaintiffs must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that Defendants' deliberate conduct can be deemed the "moving force" behind the violation. *Id*.

---

[3] A private corporation, such as CCA, that performs the traditional state function of operating a prison acts under color of state law for purposes of Section 1983. *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). That private corporation, however, cannot be held liable under a theory of *respondeat superior*. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691-92 (1978).

[4] There are at least four avenues a plaintiff may take to prove the existence of a such an illegal policy or custom: (1) a municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; and (4) a custom of tolerance or acquiescence of federal rights violations. *Spears*, 589 F.3d at 256.

6

"Official policy" often refers to formal rules or understandings - often but not always committed to writing - that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. *Spears*, 589 F.3d at 256. Defendant CCA can be shown to have a "custom" causing constitutional violations, even if that custom was not formally sanctioned, provided that Plaintiffs offer proof of policymaking officials' knowledge and acquiescence to the established practice. *Id*.

A systematic failure to train officers adequately is a custom or policy which can lead to liability. *Miller*, 606 F.3d at 255. The inadequacy of training only serves as a basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of person with whom the officers come into contact. *Id*. To establish deliberate indifference, Plaintiffs must show prior instances of unconstitutional conduct demonstrating that Defendant CCA has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *Id*.

Tennessee Department of Correction ("TDOT") policy states, among other things, that "strip and visual body cavity searches of visitors require the prior approval of the Warden/designee based upon a finding of reasonable suspicion." TDOT Policy 506.06. TDOT policy also provides that "Visitors may be required to replace their feminine hygiene products in the presence of institutional staff only if there exists individualized reasonable suspicion to prove that contraband is being brought in." *Id*.

Plaintiffs have stated that they are not challenging the TDOT policies but the wrongful implementation of the TDOT policies at SCCF. Defendants argue that SCCF policy does not allow strip searches, but it does allow staff to request visitors who are wearing feminine hygiene products

7

to change their product in the presence of institutional staff when staff possess reasonable suspicion that the visitor is attempting to introduce contraband into the prison.

Here, there are genuine issues of material fact[5] as to whether Defendants violated Plaintiffs' constitutional rights. In addition, there are genuine issues of material fact about whether Defendants' alleged violations were taken pursuant to a policy or custom.

As noted above, the parties strongly disagree about whether, given what they knew and what they saw, Defendants had reasonable suspicion to believe that Plaintiffs could be attempting to introduce contraband into the prison.[6] The parties disagree as to what the officers knew (before the incidents at issue) about Plaintiffs or the inmates whom they were visiting. The parties also strongly disagree about what exactly happened when Plaintiffs were asked to change their feminine hygiene products, including whether it was a "strip search" or visual body cavity inspection. The Court cannot find that Defendant's conduct constituted a "strip search"[7] or not if the facts are disputed as to what happened. The parties dispute whether the officers turned their backs or watched as Plaintiffs made this change and whether Defendants visually observed or inspected Plaintiffs' genitalia. Even

---

[5] The myriad times the parties accuse each other of misconstruing, misstating, misrepresenting and distorting the facts is simply one indication that there are genuine issues of fact presented in this case. Another is the numbers of alleged statements of undisputed facts which are, in fact, clearly disputed.

[6] Reasonable suspicion depends on the totality of the circumstances, and whether the defendants unreasonably searched the plaintiffs is a contested issue of fact, properly for the jury. *See, e.g., U.S. v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008).

[7] The facts in *Safford Unified School Dist. No. 1 v. Redding*, 129 S.Ct. 2633 (2009), cited by Plaintiffs, are not the same as the facts in this case, and the level of intrusion into personal privacy differ, according to which facts you believe.

if a Defendant did not observe anything, under Plaintiffs' facts, she could be liable for simply participating in the alleged search.

There is also a genuine issue of material fact as to whether Defendants could have offered Plaintiffs non-contact visits as alternatives at SCCF. The parties disagree about whether Plaintiffs (or reasonable persons) were free to leave (or felt free to leave) the prison rather than change their feminine hygiene products. The parties disagree about whether any other visitors (besides Plaintiffs) were required to change their feminine hygiene products.[8] The parties disagree as to whether a visitor's simply having or wearing her own feminine hygiene product was sufficient cause for Defendants to ask that visitor to change her feminine hygiene product in the presence of institutional staff. What was "reasonable" suspicion, what constitutes a "reasonable" search, and what a "reasonable" visitor would feel, under the circumstances of this case, must be determined by the jury.

Accordingly, the Court cannot determine these questions of fact[9] on a motion for summary judgment. Even if the alleged misconduct was found to be unconstitutional, there are also genuine issues of material fact as to whether Defendant CCA had a custom or policy of conducting unconstitutional "searches" of females. As noted above, the parties disagree as to whether any other visitor was asked to comply with this alleged "search," so the Court cannot find that this "practice"

---

[8] Despite Plaintiffs' claim that "countless" or "all" women have been required to change their feminine hygiene products in the presence of Defendants' staff, Defendants contend that Plaintiff cannot point to a single other specific occasion when a visitor was required to make this change.

[9] Plaintiffs contend that the "only permissible legal conclusion based on the essential facts is that Plaintiffs were strip-searched without reasonable suspicion as a matter of law." The Court disagrees. Defendant disputes that Plaintiffs were strip-searched and disputes that Defendant's actions were taken without reasonable suspicion. The Court cannot determine these issues when the facts of what actually happened are in dispute.

was "widespread," as Plaintiffs contend. The parties disagree about whether Defendant's policies require correctional officers to turn their backs or their heads away from a visitor changing her feminine hygiene product. Plaintiffs dispute almost all of Defendants' Statement of Undisputed Facts concerning CCA's policies and practices.

In addition, the parties disagree about what training the correctional officials at SCCF actually received and whether that training was reasonable under the circumstances. Whether Defendants' supervision was reasonable and adequate also depends upon the findings of fact as to what happened. Whether Defendants' training and supervision (or lack thereof) amounted to deliberate indifference also involves questions of fact. For these reasons, both Motions for Summary Judgment as to Plaintiffs' Fourth and Fourteenth Amendment constitutional claims (except as to Plaintiffs Jane Doe #3 and the Minor Does ## 1-3) are denied.

## STATE LAW CLAIMS

Plaintiffs allege that Defendants' conduct amounted to false imprisonment, negligence and invasion of privacy. Again, without knowing what Defendants' conduct actually *was* and whether it was reasonable under the circumstances, the Court cannot determine the facts surrounding these claims or find, as a matter of law, that either party is entitled to summary judgment on these claims. A reasonable jury could find that these state laws were violated - - - or not.

## CONCLUSION

Plaintiffs' Motion to Strike (Docket No. 133) is DENIED. For the above reasons, Defendants' Motion for Summary Judgment (Docket No. 105) is GRANTED as to Plaintiffs Jane Doe #3 and the Minor Does ## 1-3 and DENIED as to Plaintiffs Jane Doe # 1 and Jane Doe # 2. Plaintiffs' Motion for Summary Judgment (Docket No. 109) is DENIED.

This case remains set for trial on December 20, 2016.

IT IS SO ORDERED.

*/s/ Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

11